IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | : |
| NORMAN UNDERSTEIN AS TRUSTEE | |
| OF THE JILL S. PARRECO | : |
| REVOCABLE TRUST, et al. | |
| | : |
| | |
| v. | : Civil Action No. DKC 14-1452 |
| | |
| | : |
| THOMAS McKIVER | |
| | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action for confessed judgment are the following motions: (1) motion to vacate confessed judgment filed by Defendant Thomas McKiver ("Defendant" or "Mr. McKiver") (ECF No. 20); (2) motion for summary judgment filed by Plaintiffs Norman Understein as Trustee of the Jill S. Parreco Revocable Trust, Norman Understein as Trustee of the Norman Understein Revocable Trust, and Norman Understein as Agent for Purchasers (collectively, "Plaintiffs") (ECF No. 28); (3) motion to dismiss counterclaim filed by Plaintiffs (ECF No. 37); and (4) motion to withdraw four prior filings filed by Defendant (ECF No. 44). The court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion to dismiss his previously filed motion to vacate confessed judgment, counterclaim, opposition to motion for summary judgment, and

third-party complaint will be granted.  Plaintiffs' motions for summary judgment and to dismiss the counterclaim will be denied as moot.

I.  **Background**

    A.  **Factual Background**

Norman Understein is a Trustee of the Jill S. Parreco Trust and the Norman Understein Trust and is agent for Purchasers under two Secured Debentures.  (ECF No. 27, at 1).  Defendant is a borrower and guarantor on loans that have been fully advanced and are now in default, payable to Plaintiffs.  (*Id.* ¶ 3). Wendy and Simon (Oscar) Bond joined Defendant in two business ventures located in Bloomfield, New Jersey.  (*Id.*).[1]  The two businesses owned by Defendant with the Bonds operate under the following corporate entities: 554 Bloomfield, LLC ("554 LLC"), which owns and operates a commercial building; and BND Salon Corporation ("BND"), which owns and operated a cosmetology school located in that same building.  (*Id.* ¶ 5).

In 2012, 554 LLC and BND encountered financial difficulties and Mr. Understein was asked to provide financial assistance in the form of a loan.  (*Id.* ¶ 6).  Mr. Understein arranged loans to keep the businesses in operation.  According to Plaintiffs' amended complaint, "to guard against the risk of non-payment,

---

[1] Wendy Bond is Norman Understein's sister-in-law.  (ECF No. 27 ¶ 4).

the loans were secured and guaranteed personally by the three business owners, [Mr. McKiver and the Bonds]." (*Id.* ¶ 6). Defendant, Wendy Bond, and Simon Bond (aka Oscar Bond) signed a Demand Promissory and Line of Credit Note, dated April 23, 2012, for $100,000, each individually and all jointly together as "Borrower." (ECF No. 27-1). Defendant and the Bonds promised to repay the $100,000 to Norman Understein and Jill Parreco. (*Id.* at 1). The principal amount of the Demand Promissory and Line of Credit Note was advanced pursuant to three advance requests, all of which are signed by Mr. McKiver. (ECF No. 27-1, at 5-7). Paragraph 6(B) of the Note states:

> If I do not pay the full amount of each payment on the date it is due, or if I am in default under any other promissory note (either as an individual borrower, joint borrow[er], or guarantor), then I will be in default under this Note.

(*Id.* at 2). The Note provides for late charges on overdue payments, and for attorney's fees and costs if enforcement is required. (*Id.* at 2-3). The Note also authorizes judgment by confession in the event of default. (*Id.* at 4).[2] Paragraph 8 governs obligations of persons under the Note:

---

[2] In the amended complaint, Plaintiffs stated that no payments of any principal or interest have been made under the Note. (ECF No. 27 ¶ 11). In their motion for summary judgment, Plaintiffs advise that on May 21, 2012, they "received an interest payment of $2,104.10 on the debentures. This payment was short by $251.46. On or about August 13, 2012, Plaintiffs received an interest payment of the Note in the amount of

> If more than one person signs this Note,
> each person is fully and personally
> obligated to keep all of the promises made
> in this Note, including the promise to pay
> the full amount owed.  Any person who is a
> guarantor, surety or endorser of this Note
> is also obligated to do these things.  Any
> person who takes over these obligations,
> including the obligations of a guarantor,
> surety or endorser of this Note, is also
> obligated to keep all of the promises made
> in this Note. *The Note Holder may enforce
> its rights under this Note against each
> person individually or against all of us
> together*. *This means that any one of us
> [Wendy Bond, Oscar Bond, or Thomas McKiver]
> may be required to pay all of the amounts
> owed under this Note*.

(*Id.* at 3) (emphasis added).

Additionally, Defendant and the Bonds signed two Secured Debentures as Guarantors.  (ECF Nos. 27-2 & 27-3).  Each Secured Debenture, dated February 12, 2012, provides for a $50,000 loan to be repaid to Jill S. Parreco Revocable Trust (ECF No. 27-2) and Norman Understein Revocable Trust (ECF No. 27-3).  Each trust is designated as a "Purchaser" of each Secured Debenture, and Norman Understein is designated as "Purchaser's Agent."

In February 2012, 554 LLC and BND signed a Loan and Security Agreement as borrowers, creating a security interest in all of their assets for the benefit of the Purchasers of the Secured Debentures identified above.  (ECF No. 27-4).  Norman

---

$580.13, having been due on July 1, 2012. [] Plaintiffs have received no other payments under the Note or the Secured Debentures." (ECF No. 28-1, at 5).

Understein signed the Loan and Security Agreement as the Purchasers' Agent. (*Id.* at 10). Mr. McKiver did not sign the Loan and Security Agreement. On January 30, 2012, however, Mr. McKiver and the Bonds signed a document entitled "Action of Directors in lieu of Meeting," authorizing BND to join in the Loan and Security Agreement, acknowledging that 554 LLC "will borrow an aggregate of up to $500,000 from certain lenders pursuant to debentures [] to be issued by the LLC to the payees named therein [] and a loan and security agreement with the lenders." (ECF No. 27-6). This document also stated that BND "is authorized to become a party to the Loan Agreement, pursuant to which, among other things, it will grant to the Lenders a security interest in all of the assets of BND." (*Id.*).

On February 15, 2012, Mr. McKiver and the Bonds signed a Guaranty.[3] (ECF No. 27-5). The Guaranty states in relevant part:

> Each Guarantor jointly and severally guaranties (a) payment of any and all sums now or hereafter due and owing to each Purchaser by the Borrower as a result of or in connection with the Debentures, and any and all existing or future indebtedness,

---

[3] The Guaranty identifies 554 LLC as a borrower, Defendant, the Bonds, and BND as Guarantors, and the following entities as purchasers: (1) $50,000, Norman Understein or Jill Parreco, Trustees for the Norman Understein Revocable Trust dated December 19, 2010; (2) $50,000, Jill Parreco or Norman Understein, Trustees for the Jill S. Parreco Revocable Trust dated December 19, 2010; and (3) $200,000, Theodore Parreco, trustee of the James Parreco Estate. (ECF No. 27-5, at 10).

> liability, or obligation of every kind,
> nature, type, and variety owed by the
> Borrower to each Purchaser arising out of or
> related to (i) the Debentures, including,
> but not limited to, all amounts of
> principal, interest, penalties,
> reimbursements, advancements, escrows, and
> fees or (ii) any of the other Loan
> Documents.

(*Id.* at 1).  The Guaranty enables the Purchasers to pursue their rights against any guarantor.  (*Id.* at 2).  Plaintiffs contend that they are entitled to pursue Defendant alone as a borrower and need not pursue the Bonds.  (ECF No. 27 ¶ 21).

Additionally, 554 LLC, Defendant, and the Bonds had outside loans which were senior to the Understein Loans.  (*Id.* at 2-3).  Plaintiffs assert that in order to prevent default on the more senior loans and risking foreclosure, Plaintiffs continued to advance funds to 554 LLC and the Bonds invested their own money to continue the operation of 554 LLC.  (*Id.* at 3).  Meanwhile, Plaintiffs contend that Defendant stopped paying funds or providing services to the business at some point in 2013. (*Id.*).

In 2013, Defendant and the Bonds defaulted on paying the Note and two Secured Debentures.  Plaintiffs sent default notices to the respective borrowers.  (*Id.* ¶ 8).  Again, seeking to ensure that the business did not default on the more senior loans, Plaintiffs aver that they attempted to work out a Forbearance Agreement with Defendant and the Bonds.  (*Id.*).

Plaintiffs contend that the Bonds agreed to a Forbearance Agreement, but Defendant refused, prompting Plaintiffs to initiate the instant action. Plaintiffs sought judgment by confession for $200,000 as the combined original principal amount, plus interest, late fees, costs and attorney's fees. (*Id.*).

### B.   Procedural History

The procedural posture of this case is somewhat unusual. Plaintiffs originally filed a complaint in the Circuit Court for Montgomery County, Maryland on December 20, 2013, seeking judgment by confession against Defendant.[4] (ECF No. 3). On February 11, 2014, the Circuit Court issued an order directing the Clerk to enter judgment in favor of Plaintiffs and against Defendant in the amount of $229,481.18 in principal and interest calculated as of December 31, 2013, plus post judgment interest and costs. (ECF No. 10). On February 11, 2013, the Clerk of the Circuit Court certified that the judgment was entered and sent notice to Defendant informing him of his right to file a written motion to open, modify, or vacate judgment within sixty (60) days. (ECF Nos. 12 & 13); *Sager v. Housing Com'n of Anne Arundel County*, 855 F.Supp.2d 524, 552 (D.Md. 2012) (noting that

---

[4] "In Maryland circuit courts, confessed judgments are governed by Maryland Rule 2-611 (or, in the District Court, by Maryland Rule 3-611, which is substantively identical to its circuit court counterpart)." *Sager v. Housing Com'n of Anne Arundel County*, 855 F.Supp.2d 524, 552 (D.Md. 2012).

"unlike a conventional judicial proceeding, in the case of a confessed judgment . . . the defendant's first notice is of the entry of judgment by confession, which means that the defendant has no opportunity, prior to entry of judgment, to raise any defense or file any pleadings or papers." (internal quotation marks omitted)).

On April 30, 2014, Defendant removed the action to this court, citing diversity jurisdiction, and provided Plaintiffs' complaint for confessed judgment. (ECF No. 1). (*See* ECF No. 1). On April 30, 2014, Defendant moved to vacate the confessed judgment. (*See* ECF No. 20). Plaintiffs opposed the motion to vacate (ECF No. 23) and Defendant replied (ECF No. 24). Plaintiffs then filed an amended complaint on June 20, 2014, adding three additional counts for breach of contract on the Note and the two Secured Debentures. (ECF No. 27). Plaintiffs also moved for summary judgment (ECF No. 28). Defendant initially opposed summary judgment (ECF No. 31) and answered the amended complaint (ECF No. 29). Defendant also counterclaimed against Plaintiffs (ECF No. 30). Plaintiffs subsequently filed a motion to dismiss the counterclaim. (ECF No. 37).

On July 24, 2014, Defendant filed a third-party complaint, naming Wendy and Simon (Oscar) Bond as additional defendants to

the suit. (ECF No. 32).[5] On September 24, 2014, the Bonds filed a two-page answer. (ECF No. 40). On October 14, 2014, the Bonds filed a document entitled "notice of limited admission of liability," in which they state:

> Third Party Plaintiff, Thomas McKiver []
> shall be entitled to judgment against the
> Bonds for: (a) Two-Thirds (2/3) of any
> amount McKiver pays the Plaintiffs on the
> claims asserted by Plaintiffs in the latest
> amended complaint; reduced by (b) one-third
> (1/3) of the operating expenses of 554 LLC
> and BND, so that McKiver, Wendy Bond and
> Oscar Bond shall have equally shared in the
> payment of the operating expenses of 554 LLC
> and BND.

(ECF No. 42).

One day later, on October 15, 2014, counsel for Defendant filed a motion to withdraw as counsel. (ECF No. 43). That same day, Defendant's attorney filed a motion to dismiss, in which he indicated that Mr. McKiver wished to withdraw the following filings: (1) the motion to vacate confessed judgment; (2) the counterclaim; (3) his opposition to Plaintiffs' motion for summary judgment; and (4) the third-party complaint. (ECF No. 44).

On October 16, 2014, the court issued a letter order granting the motion to withdraw as counsel. (ECF No. 45). The

---

[5] On August 15, 2014, the parties filed a joint stipulation requesting a stay of the proceedings through September 12, 2014 in an attempt to resolve the dispute. (ECF No. 38). The court issued a paperless order approving the stipulation. (ECF No. 39).

letter order informed Defendant that the other parties to the action have an opportunity to provide the court with their position on his motion to withdraw the four filings and should Defendant wish to respond, he should mail a copy to the parties in this action. (*Id.* at 1). Plaintiffs and the Bonds filed separate responses. (ECF Nos. 46 & 47).[6] Defendant did not file a reply.

## II. Analysis

### A. Defendant's Motion to Withdraw Four Previous Filings

In the motion to withdraw as counsel for Defendant, Defendant's now former attorney informs that "Mr. McKiver has authorized [him] to file contemporaneously herewith a motion to dismiss the following pleadings or motions that are pending in this action:" (1) motion to vacate confessed judgment; (2) counterclaim; (3) opposition to Plaintiffs' motion for summary judgment; and (4) third-party complaint. (ECF No. 43, at 2). Defendant's counsel then filed a motion to withdraw these four previous filings. (ECF No. 44). The motion states:

> Mr. McKiver so moves [to withdraw the four filings] having full knowledge that [] dismissal of such motions and pleadings are against his own interest and with full knowledge that the most likely result will be an entry of a judgment against him, subject to the limited admission of

---

[6] On November 26, 2014, Plaintiffs filed a letter requesting a status conference. (ECF No. 48). The request is now moot.

> liability by Third-Party Defendants [the
> Bonds].

(*Id.* ¶ 4).  Defendant does not provide a reason for requesting the withdrawal of the four filings.  Plaintiffs and the Bonds filed separate responses, acquiescing to Defendant's request to withdraw the four filings.  (ECF Nos. 46 & 47).[7]

Under Local Rule 105.2(a), "all memoranda in opposition to a motion shall be filed within fourteen (14) days of the service of the motion and any reply memoranda within fourteen (14) days after service of the opposition memoranda."  Defendant has not filed a reply in connection with his motion to withdraw the filings and the time for him to do so has long passed.  Accordingly, Defendant's motion to withdraw the four filings will be granted.  Thus, Plaintiffs' motion to dismiss the counterclaim will be denied as moot.

## B.   Remaining Motion

Plaintiffs previously moved for summary judgment, stating in relevant part:

> Here, the specific "statute" on which the
> original complaint was filed is Maryland
> Rule 2-661.  The equivalent Local Rule in
> this Court on confessed judgments is L.R.
> 108.  However, *since Defendant has moved to*
> *vacate the confessed judgment and to assert*
> *a defense*, even though we contend that the
> showing of a defense on the merits is
> inadequate, Plaintiff[s] pursue[] summary

---

[7] In their response, Plaintiffs request that the court issue a ruling on the motion for summary judgment.

judgment [] as a possibly more complete remedy.

(ECF No. 28-1, at 9) (emphasis added). Defendant has now withdrawn his motion to vacate the confessed judgment, however, obviating the need to adjudicate the motion for summary judgment. The entry of judgment by confession is governed by District of Maryland Local Rule 108.1. *See Sager*, 855 F.Supp.2d at 553 n.37 (noting that the Rules of Procedure governing confessed judgments in Maryland state courts "are analogous to this Court's procedures with respect to confessed judgments."). Rule 108.1(d) states that "[a]pplication to vacate, open or modify the judgment must be made by motion within thirty (30) days after service of the notice, or such other time as may be required by statute or rule." Importantly, "[i]f no application is made within the time allowed, the judgment shall be final." *Id*. Defendant has withdrawn the motion to vacate, thus the judgment initially entered by the Circuit Court for Montgomery County – and filed in this court after removal – stands, less payments made by Defendant on the judgment. (*See* ECF No. 10). Judgment was entered in favor of Plaintiffs and against Defendant in the amount of $229,481.18 in principal and interest calculated as of December 31, 2013, plus post judgment interest and costs. *See, e.g., NILS, LLC v. Antezana*, 171 Md.App. 717, 729 (2006) ("When unchallenged or not successfully challenged,

[a confessed judgment] permits the holder to by-pass the trouble, the time, the expense and the uncertainty of a trial."). The judgment encompasses all relief sought by Plaintiffs in the amended complaint. (*See* ECF No. 27, at 6-7).

Plaintiffs also request leave to file an application for attorneys' fees and costs.[8] Paragraph 6(E) of the Demand Promissory and Line of Credit Note signed by Defendant states that the "Note Holder will have the right to be paid back [] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees, court costs and other collection costs." (ECF No. 27-1, at 3). Paragraph 8 of the Secured Debentures states: "[s]hould this Debenture be referred to an attorney for collection, whether or not judgment has been confessed or suit has been filed, the Borrower shall pay all the holder's reasonable costs, fees and expenses, including reasonable attorneys' fees resulting from such

---

[8] The February 11, 2014 order from the Circuit Court further stated that "the issue of attorneys' fees shall be set for hearing by the Assignment Office in accordance with Rule 1.5 of the Maryland Rules of Professional Conduct and *SunTrust v. Goldman*, 201 Md.App. 390 (2011)." (ECF No. 10, at 1). On March 18, 2014, prior to removal, Plaintiffs' counsel submitted an affidavit in support of his claim for attorneys' fees in the Circuit Court. (ECF No. 14). The hearing on attorneys' fees was scheduled for May 7, 2014. (ECF Nos. 17 & 18). The case was removed to this court on April 30, 2014, and it does not appear that the issue of attorneys' fees was resolved in the Circuit Court.

referral." (ECF No. 27-2, at 3 & ECF No. 27-3, at 3). Local Rule 109.2 requires "any motion requesting the award of attorneys' fees [to] be filed within fourteen (14) days of the entry of judgment." Accordingly, Plaintiffs will have fourteen (14) days to move for attorneys' fees in accordance with Local Rule 109 and Appendix B.

## III. Conclusion

For the foregoing reasons, Defendant's motion to withdraw his previous filings will be granted. Plaintiffs' motions for summary judgment and to dismiss the counterclaim will be denied as moot. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
